Eapthern Joseph SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–97–00105–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 26, 1998.

Decided April 21, 1998.

Jack O. Herrington, County Atty., Clarksville, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Eapthern Smith appeals from his conviction in a jury trial for aggravated sexual assault of a child. The jury set Smith's punishment at ninety-nine years' imprisonment and a $10,000.00 fine. Smith complains on appeal that he was denied effective assistance of counsel, and that the provisions of the Penal Code that disallow consideration by the jury of a defendant's voluntary intoxication are unconstitutional.

It is essentially uncontested that Smith forcibly had sexual relations with his girlfriend's thirteen-year-old daughter. The girlfriend assisted Smith in the crime, and in a separate proceeding she was convicted and sentenced to forty-two years' imprisonment. At trial, Smith defended on the ground that he was too drunk to know what he was doing.

Smith contends in several points of error that he was denied his constitutional right to effective representation by counsel.

The standard for determining claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and has been adopted in Texas in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). In *Strickland*, the Supreme Court held that a defendant claiming ineffective assistance of counsel must prove that counsel's representation fell so below an objective standard of reasonableness that it undermined the "proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. at 686, 104 S.Ct. at 2064. Thus, Smith must prove that his counsel's representation was deficient and that the deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. Stated another way, Smith must prove by a preponderance of the evidence that his counsel's representation fell below the standard of

Gary L. Waite, Paris, for appellant.

prevailing professional norms and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996).

■ Our review of counsel's representation is highly deferential. We indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065. Smith has the burden to overcome that presumption. *Id.* He must identify the acts or omissions of counsel that constitute ineffective assistance and affirmatively prove that they fall below the professional norm for reasonableness. *Id.* at 693, 104 S.Ct. at 2067-68. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Cruz,* 739 S.W.2d 53, 59 (Tex.Crim.App.1987).

■ Smith first contends that his trial counsel was ineffective because he did not request an accomplice witness instruction. It is obvious that the victim's mother was an accomplice, and the Court of Criminal Appeals held in *Ex parte Zepeda,* 819 S.W.2d 874 (Tex.Crim.App.1991), that counsel's failure to request such a charge is error. The court held that there was a reasonable probability that, had the jury been properly instructed that an accomplice's testimony must be corroborated, the jury might have reached a different result. Accordingly, the Court found ineffective assistance and reversed.

Because of this error by trial counsel, we must determine whether the error prejudiced Smith's defense. The accomplice's testimony does not stand alone, nor is the amount of evidence corroborating her testimony minimal. The child victim testified in detail about the way her mother and Smith committed the crime. Her mother's testimony confirmed the victim's testimony in detail, as did the testimony of an outcry witness and the child protective services worker who had in-

terviewed the victim. Finally, Smith himself testified in a manner that essentially confirmed every detail of the offense. Thus, the evidence proving the act is essentially undisputed, so the error in failing to ask for the charge is harmless.[1] *Robinson v. State,* 665 S.W.2d 826, 832 (Tex.App.-Austin 1984, pet. ref'd).

■ Smith next contends that his counsel was ineffective for failing to cross-examine the victim's mother about the circumstances surrounding her plea bargain for her part in the crime. In light of the sentence that she received, it is arguable that counsel may have simply thought she did not get a very good deal and made a strategic decision not to inquire too closely into the terms of any agreement.

■ In evaluating the first prong of the *Strickland* inquiry, counsel's competence is presumed, and an appellant must rebut this presumption by proving that the challenged action was not sound trial strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587-88, 91 L.Ed.2d 305 (1986) (citing *Strickland v. Washington,* 466 U.S. at 688-89, 104 S.Ct. at 2064-65). A full inquiry into the strategy or tactics of counsel should be made only if, from all appearances after trial, there is no plausible basis in strategy or tactics for counsel's actions. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App. 1980); *Stenson v. State,* 695 S.W.2d 569, 571 (Tex.App.-Dallas 1984, no pet.). This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Johnston v. State* 959 S.W.2d 230 (Tex.App.-Dallas 1997, no pet. h.); *Weeks v. State,* 894 S.W.2d 390, 391 (Tex. App.-Dallas 1994, no pet.).

---

1. An instruction concerning the accomplice witness testimony would have informed the jury that it could not convict Smith without corroborating evidence which tended to connect him to the commission of the offense, and that evidence merely showing commission of the offense would not be sufficient. Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).

In this case, there is a reasonable explanation for counsel's failure to explicitly ask the mother about her agreement with the State. Thus, the first prong of *Strickland* has not been met.

Smith next contends that counsel was ineffective for failing to question the veniremen on voir dire about the concept of voluntary intoxication as mitigation of punishment. That issue was sent to the jury during the punishment phase of the trial.

Section 8.04 of the Texas Penal Code provides in pertinent part:

(a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

TEX. PENAL CODE ANN. § 8.04(a),(b) (Vernon 1994).

Defense counsel asked no questions of the potential jurors on voir dire about intoxication and their ability to consider it in mitigation of punishment. Intoxication was not mentioned either by counsel for the State or by defense counsel during voir dire. The first mention of the subject was made by defense counsel during his opening statement to the jury when he began to set the stage for his defense by stating that the evidence would show that at the time of the incident Smith was extremely intoxicated, that he was an alcoholic, that he was so intoxicated that he could not maintain an erection, and that the main instigator of the offense was the girl's mother, who was also drunk at the time. Their intoxication was first brought into evidence by the State when the prosecutor asked the victim if Smith and her mother had been drinking, and then whether they were drunk that day and whether she thought they knew what they were doing. Consistent with his opening statement, defense counsel asked the victim for more detail about Smith's and her mother's drinking habits and the quantity of alcohol they consumed on a regular basis. Defense counsel also raised this issue in cross-examination of the child protective services worker who testified about the story that the victim had told her about the incident.

Detailed evidence about Smith's drinking habits was not introduced, however, until defense counsel cross-examined the victim's mother. At that point, counsel elicited testimony in detail about the amount of Smith's alcohol consumption and the continuous drinking that occurred during the day of the attack. The same type of testimony was elicited when the defense began the presentation of its own witnesses and through the defendant's own testimony about his alcoholism. The prosecutor then cross-examined Smith at length about the level of his alcoholic stupor.

■ This sequence of events reflects the importance of intoxication to this case. Although intoxication is clearly not a defense to this prosecution, it may be considered as a mitigating factor at punishment. Defense counsel's failure to question prospective jurors on intoxication at voir dire, however, may well have been a deliberate trial strategy. Certainly, there is nothing in the record or in defense counsel's performance at trial to indicate his failure to raise the issue at voir dire was a simple mistake based on lack of knowledge or expertise. It appears to have been a deliberate choice of trial strategy. A legitimate and reasonable trial strategy is not ineffective assistance, even if, on hindsight, the strategy appears to have been unwise. *Heiman v. State*, 923 S.W.2d 622 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd); 41 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 24.83 (Texas Practice 1995).

■ Moreover, before trial counsel's assistance can properly be labeled as ineffective, counsel's strategy must be shown by the record, or the act or omission must be so apparently deficient that it need not appear in the record. Only in rare and egregious circumstances will a record on direct appeal suffice to rebut the presumption of sound trial strategy. *Kemp v. State*, 892 S.W.2d 112, 115 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Before we can properly judge an ineffective assistance of counsel claim, we must examine the record and focus specifical-

ly on the conduct of defense counsel. *Id.* The best kind of record for this kind of review is one produced on a hearing on a motion for new trial or a hearing on an application for writ of habeas corpus. *Id.* We have neither in this case. Because we cannot use conjecture in evaluating counsel's strategy, the ineffective assistance claim with respect to voir dire must be denied. *See, e.g., Jackson v. State,* 877 S.W.2d 768 (Tex. Crim.App.1994); *Delrio v. State,* 840 S.W.2d 443 (Tex.Crim.App.1992).

■ Smith next contends that counsel erred by failing to question panel members at voir dire about their ability to consider the entire range of punishment. The record shows, however, that State's counsel accurately informed and then questioned the venire about their ability to consider the entire range of punishment, so there was no necessity for counsel to re-ask the same questions.

■ Smith next contends that his counsel was ineffective because he did not question the panel members about the presumption of innocence and burden of proof. The trial court had already informed the jury about those principles, and the prosecutor asked several questions designed to determine whether the prospective jurors were able to fairly decide the case and restrict their consideration to the evidence presented at the trial. Several panel members were excused as a result of their answers to these questions. The relevant issues were adequately raised, and there was no need for defense counsel to re-ask the same questions. *See Standerford v. State,* 928 S.W.2d 688, 696 (Tex.App.-Fort Worth 1996, no pet.).

In summary, we find that none of the alleged errors of defense counsel at trial satisfies either prong of the *Strickland* test. From the record we have before us, Smith has not demonstrated that his counsel's performance fell below a reasonable objective standard, and he has not demonstrated that any alleged error prejudiced his defense.

*See Ex parte Duffy,* 607 S.W.2d 507 (Tex. Crim.App.1980).

Smith also contends that Section 8.04(a) of the Texas Penal Code is unconstitutional because it does not allow proof of extreme intoxication to negate *mens rea* as an essential element of an offense. In other words, he contends that intoxication destroys the element of intent required by TEX. PENAL CODE ANN. § 6.02(b) (Vernon 1994).[2]

■ A long line of cases have consistently held that the evidence of appellant's intoxication, if any, does not negate the elements of intent or knowledge. *Hawkins v. State,* 605 S.W.2d 586, 589 (Tex.Crim.App. [Panel Op.] 1980); *see Tijerina v. State,* 578 S.W.2d 415 (Tex.Crim.App. [Panel Op.] 1979); *Ramos v. State,* 547 S.W.2d 33 (Tex.Crim.App. 1977); *McElroy v. State,* 528 S.W.2d 831 (Tex.Crim.App.1975).

■ Smith contends that the rule advanced by those cases is unconstitutional. He argues that the statute will not pass constitutional scrutiny because it denies an accused the right to negate an element of an offense by proof of intoxication.[3] The cases he cites, however, merely reiterate the standard rule that the State must prove guilt beyond a reasonable doubt.

Counsel also directs this Court to a trio of cases from other states as support for his position: *State v. Hoffman,* 328 N.W.2d 709, 715 (Minn.1982); *State v. Korell,* 213 Mont. 316, 690 P.2d 992 (1984); and *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910). In the oldest case, *Strasburg,* the Washington Supreme Court held that a statute providing that insanity is no defense to a criminal prosecution was unconstitutional because it took away from the jury the question of criminal intent.

In *Korell,* the Montana Supreme Court reviewed the historical background of the *mens rea* requirement, and recognized that from the earliest period of the common law one who lacks the requisite criminal state of

---

2. There is evidence that Smith had drunk eighteen to twenty-four beers during the eight hours preceding the rape, and had drunk an average of twelve to fourteen **cases** of beer per week for some time.

3. *Citing Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970).

mind may not be convicted or punished. *State v. Korell,* 690 P.2d at 999. The Court applied Montana law to allow evidence of mental disease or defect to be introduced to rebut proof of the defendant's state of mind.

In *Hoffman,* the Minnesota Supreme Court also examined the scope of a mental illness defense, finding it constitutional in nature and holding that defendants have a due process constitutional right to assert the defense of mental illness under their State constitution and the United States Constitution.

All of these cases involve situations not present in this case. One distinction is that intoxication to the level of stupor is self-induced rather than the result of a disease or mental defect. Thus, Texas cases have consistently required a defendant to accept responsibility for the actions he took while voluntarily intoxicated, regardless of his level of intoxication. The underlying principle for this concept is that a "sane man, who voluntarily puts himself in such a condition as to have no control over his will or actions, must be held to intend the consequences springing therefrom." *Taylor v. State,* 885 S.W.2d 154, 156 n. 4 (Tex.Crim.App.1994) (quoting *Evers v. State,* 31 Tex.Crim. 318, 20 S.W. 744, 746–47 (1892)).

Moreover, the Legislature is permitted to define criminal offenses in any it chooses, so long as its decision is not arbitrary or violative of the Constitution. It is also free to define the elements of criminal offenses, *Crawley v. State,* 513 S.W.2d 62 (Tex.Crim.App.1974), and we are aware of no constitutional provision requiring that voluntary intoxication may negate intent as an element of an offense.

For the reasons stated, the judgment is affirmed.